24-2136. Will the lawyers please approach the bench. Good morning, counsels. If you would each please state your names for the record, spell them slowly, and tell us who you represent. Sure. Nicholas Belang, B-E-L-N-G-Y. And I represent the Bank of New York Mellon. Rod Rejenevich. First name is R-A-D-E. And Rejenevich, R-A-D-J-E-N as in Nancy, O-V-I-C-H. Could you pronounce your name again? Rejenevich. Rejenevich. Thank you. Rod is fine. So, counsels, you will each have 15 minutes to argue. As the appellant, do you wish to reserve any time for rebuttal? And if so, how much? I'd like to reserve four minutes for rebuttal. Four, okay. Okay. Anything else before we get started? Is there a clock that we watch or do we track it ourselves? You know, we can track it on the clock. And it might expand or not everybody has the same issues, right? So there's some degree of flexibility in that. Thanks. Mr. Blay, whenever you're ready. Good morning, Madam Justices. Nick with Blay for the Bank of New York Mellon. May it please the Court. Good morning, counsel. There are, principally speaking, two issues in this case. First is the sufficiency of the notice. Second is the statute of limitations. As you saw, I'll start with the notice briefly. It's undisputed that it falls under a strict compliance standard. As a condition precedent in the contract, we know that it does apply to these pre-acceleration notices. However, contrary to what the circuit court ruled, we would submit that it does facially comply with the strict compliance standard. The notice in this case... So you're sort of saying, counsel, that that's like substantive compliance? And are you looking to any cases for that proposition? For example, some of the unpublished cases prior to 2021? Yes, Justice Walker, and I do apologize for that. I was uninvolved in the briefing, but it was an oversight on our part. It doesn't change the underlying substance of our argument, even disregarding those cases. And so, first and foremost... So you're not disputing that we should be using a strict compliance standard? Absolutely. Not disputing that. Does strict compliance mean word-for-word mirroring of the contract in the notice of default, or something else? It does not. It means something else because we have this case law on technical defects, which incorporate a prejudice evaluation. While it is strict compliance in Illinois, that technical defect analysis is akin to what other jurisdictions allow for in a substantial compliance standard, albeit named differently. But one can start with the language in the notice itself, which included the requisite information of the default amount, the period by which a cure has to be made, the consequences of it, and critically for this appeal, that even after acceleration, the borrower, Ms. Farbstein, retained a right to bring the loan current by curing the default. We know from statutory law that that falls under the umbrella of reinstating the loan, which is defined as curing a default. So we can look at both the contract language here, right, mortgage and so forth, the note, but we can also look to the statute. And doesn't the statute pretty much say that when it defines the term reinstate, doesn't it talk about curing the default? Absolutely. The statute defines it. And so is that why you're saying that you believe you've strictly complied? That's part of it. To the extent there is an inconsistency in the contract that would be outside of the bounds of Illinois law as to what constitutes reinstatement, the statute would control. Didn't, you said you didn't do the underlying curing. I did not. But didn't your client argue this very issue at the summary judgment level that the statute defines reinstatement as curing the default? And I'm talking about after acceleration. Wasn't that one of the arguments that was made at some point? It was. And so the language of curing is synonymous with reinstating in this context. Give us, though, again, I want to know what you're thinking as to how it's strict compliance. You've argued, of course, that it's a technical defect and that in that case there has to be prejudice, and it doesn't appear that prejudice has been alleged. But just enlighten us again. When you say strict compliance, because that's what's argued in the brief, what exactly do you mean that there was strict compliance? Strict compliance would be conveying the information to the borrower so they understand that they're right in accordance with the requirements. And so based on the information, whether it's not word for word or the exact verbiage you believe would be strict compliance. Exactly. So my next question, then, is are you taking that from a particular case? It's gleaned from the cases discussing technical defects. But those cases, I think, are pretty much pointing at this would be a technical defect. When it doesn't track the language of the contract word for word, the most it would be is a technical defect. I'm still looking for, you know, the strict compliance you're saying as long as the information is provided and that that's in the notice. But give me a case that says that's strict compliance. Sure. I would submit that the technical defect analysis is a subset of strict compliance. So there's not a separate standard. There's not a substantial compliance standard in Illinois. So the technical defect, if you look at the cases like GOLD when they discuss it, they do so in the context of it strictly complies because it falls under the realm. That's how you read GOLD? Yes. Okay. I'll have to look at it again. But I do know that there are a number of cases, obviously, that say when you're not using word for word language, but the meaning is the same, that that's just a technical defect. And then the borrower would have to establish how they were prejudiced from the different language, I suppose, or how they were prejudiced in the failure to make their payments. Precisely. And perhaps it's better to start with technical defects because it's such a clear application to this case where it's not even alleged that there is prejudice. So the Circuit Court below – Were you ever alleged? Was prejudice ever alleged? Not to my knowledge. It was not alleged, and it was not maintained at summary judgment. And based on the briefing on appeal, it's not even contended that there is prejudice here. And this is only logical because the judicial foreclosure complaint itself was the first unequivocal acceleration triggering what would be the reinstatement period. Ms. Farlstein has been confidently represented by counsel for 17 years upon the filing of the action. So this isn't the same circumstance that you sometimes see where a borrower alleges prejudice because the reinstatement maybe occurred before a filing of a judicial action. This occurred all after. And there's no allegation that Ms. Farlstein did not understand that this language regarding the right to cure or that her character acceleration was somehow different in any sense from reinstating the loan or that she ever would have reinstated either retrospectively back then or today. She could still reinstate. But speaking to the technical defect, the cases really fall into two categories. You have the agitato type cases in Cruz, which in Cruz it's described as severe, severely deficient. And there's multiple defects in these notices. They don't indicate the amount. They might not say that there's a right to cure. Those kind of defects are what we see in the ones that find it falls outside the gambit of strict compliance. On the other side, you have cases like Gold and Luca and Hoft that look more at a practical approach, the whole picture. They don't apply a rigid linear analysis like the circuit court did below where you look at is there strict compliance. If not, is there a technical defect which we don't even have a definition of? And then if so, is it a prejudice? Rather, they look at this all together to determine whether it essentially would have made a difference. And that's really what underpins the technical defect logic in these cases is the idea of the maximum futility, that the law does not require one to do a vain and futile thing. It does require you to convey the correct information under the strict compliance standard. Is it your position that the correct information was conveyed because of what's listed in the mortgage document or because of what's listed in the actual notice or both? It would be both. The notice apprised Ms. Burlstein of the right after acceleration and before foreclosure to do something to prevent the latter from happening. In the notice, it described that as curing the default, which we know to be the same as reinstating a loan. And so it didn't use the word reinstate. If the case was dismissed and a new notice was sent and we just substituted that word cure for reinstate, it would not change anything either retrospectively back in 2007 or today. And Ms. Burlstein does not contest otherwise. And so for those reasons. So cure and reinstatement can be used interchangeably? To the extent there is a finding that they are not synonymous, they are close enough at conveying the meaning of reinstating a loan before foreclosure happens and after acceleration that it would fall under that technical defect analysis. If we get away from sort of this concept of strict compliance, meaning word for word or verbatim, how do we sort of consider the interrelationship with the legal canon that we're supposed to basically put the burden on the drafter? Do you know what I'm saying? Like, you know, you're the drafter of the note. You're the drafter of the mortgage documents. The bank is. So we're supposed to construe everything against the drafter, right, if there's a question? So how do we, if we're going to kind of say, well, it doesn't have to be verbatim, it doesn't have to be word for word, how does that interconnect with our other obligation to construe ambiguities or what have you against the drafter? I think that would fall more under contract construction of how to construe the meaning of a clause, more so than whether a separate notice sufficiently apprises of a right that's in the contract itself. So they're really a bit separate. So how do you agree that the notice that you sent does not say, Bartlestein had a right to reinstate after acceleration, and it doesn't really say she has a right to cure after acceleration. It says she may have a right to cure after acceleration. And should that be a concern that it doesn't fully cover Section 19 and Section 22 of the contract? It leaves out two items. I mean, you've got two of them from Section 19, but are missing the other two. Do you agree with that? Specifically regarding the missing items, if you look at what the items are, they still are in relation to whether there's a default under the mortgage documents. And so curing the default is – What are the two missing items that are not in the notice that are in the mortgage contract? The mortgage contract references that you can reinstate the loan by paying the arrearges and any other fees and costs, which is noted in the notice, as well as other defaults in the mortgage or other remedies that would be necessary to the lender. But we see this often with, like, an HOA lien being recorded against the property. The borrower has an obligation to – So that's what's in the notice, right? You pay the outstanding billings. You pay the attorney fees and costs. What is not in the notice that's in paragraph 19 of the contract? Or what is it you're saying is, like, ostensibly missing from the notice that is included in the mortgage documents and sufficiently apprises the owner of notice when you read them in conjunction with each other? I would say that that's their argument, that there are additional criteria in the mortgage. Right. Can you address that? Right, right. So it would fall under the umbrella of defaults in the mortgage. So curing the default would necessarily cure any other requirements in the mortgage, such as paying off a lien or that kind of thing. Didn't the trial judge, in fact, call the other missing, whatever, a technical defect? And is that really on appeal here? I didn't know that that was being somehow suggested. Just to clarify, there was another defect that the trial judge found technical, which was in relation to the right— That you're not challenging. No one's challenging. It's the right to bring a judicial action into places. Yeah, right, right, right. There's a case actually directly on point in First District that actually compares that language, whether you have to do it separately or you can do it in the foreclosure action. Yeah. Okay, but I'm pretty sure that the judge actually called that a technical defect. They did, and that is squarely on point in the Gold case, which addressed that issue. Right. And it did also address that permissive may language and found that that does not change the gamut of the analysis. Let me ask you some other area. Okay. This idea, when was the notice issue raised in the 17-year long proceedings? Do you recall what year it was where it became an issue? I want to say it was 12 years in. It was a long way in. Okay. We did argue the prejudice below. And what was—I don't know. The case law says that when you filed the complaint, you indicated that notice was compliant. Did you not? Yes. And then the answer, I believe, was they did not deny it? Correct. They didn't raise the affirmative defense. Okay. And they filed their answer back on June 20, 2009, right? Yeah. And they did not raise the affirmative defense of any sort of defect of the notice? That's correct. Okay. So when did they first raise it? I believe they first raised it at summary judgment. In 2019? Yes. Okay. There's a few cases out there, aren't there, that say that you don't raise this timely or you simply just enter a general denial that is not sufficient, that the claim can be forfeited or should be forfeited as a result? And the justice, or the circuit court, originally ruled it that way and then reconsidered it in quite different ways.  All right. Well, you better move on maybe to the— Yeah, I do want to address sexual limitations.  So principally the statute of limitations issue, there's lots of nooks and crannies that one can go into on this, but at bottom what it's about is whether a judicial foreclosure action that specifically invokes the note, incorporates the note, attaches it to the amended complaint, and requests a personal deficiency judgment that can only exist by virtue of liability under the note, is sufficient to be called an action upon the note for purposes of the statute of limitations. Did the original complaint plead an action on the note? The original complaint did. It did not attach the note. But it did not attach the note. That was in the amended complaint. Okay. But it did list. Correct. Okay. And so we have cases like Cabo that have addressed this issue in the first filing context and held that there's essentially an implicit claim under the note, a second claim under the note, even in these single foreclosure actions, where the borrower or where the lender seeks a deficiency or preserves the right to seek a deficiency even. And it stands to reason, we understand this, Bardostin raises a lot of umbrage about that being decided in not a statute of limitations context. But the underlying logic of that case, the finding that by invoking the note to seek a personal deficiency necessarily requires bringing an action upon the note, it applies equally here to the statute of limitations context. And so there's really no logical reason to assume that a quasi-in rem action premise on the note would not satisfy the statute of limitations for action brought upon the note, even if there's unique remedies in personam action under the note, which is another point of contention in the response, that there's significant time spent to this idea that because there's unique remedies, somehow the statute of limitations wouldn't apply. But instruments have unique remedies all the time. A contract could have one remedy or another. And if you elect to sue under one, you're not, maybe you are forfeiting a separate action under another remedy, since the statute of limitations is procedural in nature and bars remedies. But it wouldn't somehow make the pending action, which has already been timely filed, and it's indisputable that the judicial procedure here was timely filed, it wouldn't make an independent statute of limitations run against a pending case. And even the older, antiquated Illinois Supreme Court cases that have sort of bombastic language about the lien is gone, or those kind of languages, like Emory, even there they recognize that one way to save the note would be a pending foreclosure. So we have exactly that here. Now, going to those cases briefly, and I know I'm probably over time, but those cases were decided in an entirely different context before statute of limitations was really addressed in the same way. If you look at the Pollock case, they spend significant time discussing the English standard of statute of limitations, almost more akin to what we would consider a statute of repose today. They describe it as a presumption that the debt has been satisfied when the statute of limitations expires. That's a substantive presumption. And under that kind of logic, one can see why, if the debt's satisfied, there wouldn't be any basis for a foreclosure. No one would contest that. But it's very different from the modern approach to statute of limitations as a procedural nonsubstantive bar that would not destroy or in any way impair the underlying debt or the rights upon it. All it would affect is a legal avenue for a specific remedy in court. And the other distinguishing factor from those cases I would just end on is that they're not dealing with a situation where there's a pending foreclosure that already is quasi-in rem and based upon the note. They're talking about a situation where the statute of limitations runs on the note independently and then would that bar a foreclosure action. Well, that's really consistent with our argument, because if a foreclosure action is so inextricably tethered to the note when it seeks a personal deficiency, that a statute of limitations running on the note would preclude that action, that's pretty much consistent with what we're saying. And in this case, we brought the foreclosure complaint invoking the note well within that 10-year period. It was contemporaneous, in fact, with the accrual of the statute of limitations. Justice McBride, any additional questions? No. Thank you, counsel. Thank you very much. Good morning. Good morning. My name is Rod Rogenevich. I have been an appellee, defendant, W. Barlstein's attorney for the last 18 years since this case was filed Christmas Eve 2007. I'm going to start where counsel just left off here. This counsel repeatedly referred to filing an action to foreclose and an action on the note. This foreclosure has for 18 years been a single count foreclosure action. The initial complaint had if-sought language in the remedies. And what language? If-sought language. That's the template language from the statute, 1504. And it says you could ask for all these things, or you don't have to ask for all these things, but this is what you could ask for. And you could ask for a personal deficiency if sought. So that language is cut and pasted. Being incorporated. Yeah. It was talked about in COBO, too. So the patent was amended in 2009, and that language disappeared. There's not even if-sought language there. That language is not even in there. I think something went wrong with cutting and pasting, but it is not in the request for relief. This is not an action on the note. I think I tried to – there's so many nooks and crannies. What is it in the action? So foreclosure is a quasi-inrediment action. You're using the property to get that debt paid off. It's different from an impersonum action, which is a separate action on the note, which is where you are imposing personal liability on the debtor. So the complaint for foreclosure was filed in 2007. Is that correct? Yes. And the mortgage was secured in 2006? Or is that when the first payment? The last payment on the mortgage was August 2007. How many payments were made in this particular action? There was a 2006 mortgage. Was it one or two payments? I thought it was seven payments. There were seven payments made. Seven payments made. Yes. All right. Seven payments were made. The notice went out on September 17, 2007. That was a 30-day notice, and then the foreclosure was filed. And so it's not enough to incorporate the note and attach it to your complaint? Is that what you're saying? No. All foreclosure, the foreclosure statute, and it requires you to attach the note because you are using the notice secured. You're going to apply that property to that note, so there's many things you have to prove. The foreclosure statute has many things that you have to prove. You have to prove the mortgage. You have to have the note attached. You have to show that there was a debt. There's many things to prove. That's why the note is attached. We don't have a one-action foreclosure in Illinois. Some states do. California does. You either have a choice. You can file a foreclosure and ask for a deficiency, or you can file a note. If you file a note, you can't foreclose. If you file a foreclosure, you can maybe pursue the deficiency. I think that the Bank of New York is trying to collapse a foreclosure into an action on the note, and that's not what's going on here. The Foreclosure Act allows a personal deficiency of some. But before you even get there, you have to get it. But before that, like in their original complaint, yes, it's kept in complaint to foreclose mortgage, but the statement as to the default also includes, there remains an outstanding principal balance of $509,000. And it references the plaintiff as the holder of the indebtedness. It references the request for relief, a personal judgment for a deficiency, if sought only against those defendants not discharged in bankruptcy. So isn't that enough to bring it into the note? The note is, has to be attached to a foreclosure filing. The statute requires that. But it's not an action on the note. But they did eventually attach it, right? Oh, no. The note, they had the wrong note, I think is what they had. They had the wrong note or whatever. I'm not saying that there was never a note. I think they had the wrong note. On the first one or the second one? The first one. And that's why they amended it. It was the same complaint. They forgot the if sought language. So you got the right note. It was a note, but for some reason, I think they had missing endorsements. We had brought that up as an affirmative defense. But that was not in your first affirmative defense. That was the initial affirmative defense. There were seven affirmative defenses. There were three when we filed our answer. And then there were seven in all. I think the trial court went through them. But we're on appeal on just the two, which was the incident mortgage issue and the notice issue here. So, yes, I think the crux here is, what is this deficiency that's allowed? In a foreclosure? Is it akin, is it equivalent to an action on the note? A deficiency request per the statute is contingent. It's a statutory incident to a quasi and rem foreclosure. You have a foreclosure statute. You have a foreclosure complaint. You're allowed to ask, if you want to, for a personal deficiency. But you're allowed to do that by statute. And per 1508E, you have to do a lot of things before you can even try to get a deficiency. You have to get a judgment of foreclosure. You have to have a sale. You have to report a sale. You have to have a confirmation of sale. And maybe there will be a deficiency at the end. In 18 years, there was never a judgment, a sale, a report of sale, confirmation. None of that. That's because it ended at summary judgment. It did. 18, 19 years after. Sure. And I'm going to tie it in with I think it's a really relevant statute here. But also, before you even get a deficiency, you have to move, you have to motion, and have a hearing. And in that hearing, you have to prove that you are otherwise authorized for a deficiency. And then you have to, part 1508E2, and then you have to prove, excuse me here, that you're authorized and other matters. So there's a whole process here. And in 18 years, that never happened. But looking after all this and looking at the COBO, especially I think Paragraph 30. Can you explain to us why COBO doesn't control this? This is not a res judicata case. This is not a single refiling case. COBO is very specific. COBO said all our 100 years of case law, Terzak, Goldstein, Coleman, all these cases, those are res judicata cases, all recognize that these are distinct remedies, an action on a note and a foreclosure action. These are the same. And COBO says we're not disturbing all that. But for the purposes of the single refining rule, in COBO there was a foreclosure asking for a deficiency. So if they don't get a personal deficiency, how does that impact the foreclosure? Oh, I.  Because why don't they get, we're arguing here, they don't get a deficiency because. If they take your argument to the extreme. Okay. So there's not going to be a personal deficiency against Ms. Goldstein. How does that really change the statute of limitations? Because there's parallel tracks going on here. And that's what we argued. And I think 15.15.11 of the foreclosure, and COBO talks about it I think in Paragraph 39, and I'll get to that in a second. So 15.15.11 says this. It's titled Deficiency. Quote, except as expressly prohibited by this article, foreclosure of a mortgage does not affect a mortgagee's rights, if any, to obtain a personal judgment against any person for a deficiency. So those words, if any, to me are crucial. They're critical. A foreclosure action preserves deficiency right. It doesn't create them. It doesn't say that a foreclosure automatically commences an action on a note. It does say that a contingent deficiency prior, sorry, 15.11 preserves the lender's deficiency right only if those rights exist. If the note becomes unenforceable during those 18 years, under 13.206, after acceleration, and no timely action on the note has been commenced, then there are no remaining rights, if any, for 15.11 to preserve. So I think 15.11 here is a linchpin. It's saying you're allowed a deficiency in a foreclosure. You have to ask for it first. The amicus said you don't even have to ask for it. Just filing a foreclosure complaint under the short form is enough. It's automatically an action on the note, and you don't have to worry about 13.206. Just ignore that statute on promissory notes. We're just going to collapse everything into a foreclosure. A request for a personal deficiency is a markedly different animal than an action on a note to hold someone personally liable. They're different remedies. And so what I think 15.11 is saying is you may wait 10 years, Bank of New York, Maryland, and you have the single count foreclosure. But was that complaint timely filed, the foreclosure? The foreclosure complaint was timely filed. That is not in dispute. Okay, so what you're disputing only is the personal deficiency, whether or not that can be attempted. No, no, that's not it. They proceeded on the foreclosure chart, and they did not file a separate action on the note. Was that complaint untimely? Was that filed after the statute of limitations? The foreclosure complaint was timely filed. The notice of acceleration, and we'll get to the notice of acceleration. The notice of acceleration, compliant with paragraph 6C of the note, that all our family-friendly foreclosures filed in the state of Illinois, there are deemed to be construed allegations 15. I'm thinking 15. There are deemed to be construed allegations that say that you're deemed to have accelerated, you're deemed to have sent the notice, and then you file your foreclosure. They accelerated this note on October. They sent this acceleration notice September 17th. The trial court found that it was, by its language, accelerated October 17th, 2007. So that note has been accelerated now for 18 years. We could talk about a foreclosure, but there's a note out there just sitting out there for 18 years. It doesn't matter for the first 10 years. Hopefully the Bank of New York can foreclose on this mortgage, get their deficiency. But now we're in year 17. The note is no longer enforceable. That promissory note, and we went into great details, and the trial court did in 140 pages of opinion. That note is no longer enforceable. The repercussions of that is that you can't get a deficiency, but the mortgage died. The mortgage itself is no longer enforceable because of the mortgage incident rule. A mortgage is an incident of a note, and when the note is no longer enforceable, that mortgage dies on the vine. So this is a rare case. My niece was in kindergarten when it started. She's now an aspiring actress in Lakeview. This is a rare case. And you have nothing to do with the 18 years it took to get to this point? You counseled for Debbie Harlestein had nothing to do with the fact that this took 18 years to be resolved in Las Vegas? I am not a captain of Bank of New York's lawsuit. That's not my question. That's not my question. No, no. We defended the case. We discovered it. We filed a motion for settlement. You know what? I think we have to move on. Why did it take so long to bring the affirmative defenses on the notice being deficient? Because as the years evolve, so does our case law, Your Honor. The Acetero defense, 2016. Cruz. The law is so vastly different than what we have here. They didn't do anything to comply, did they, in Acetero or Cruz? I would disagree. How many letters were there in the Acetero case? You tell us right now. How many letters were sent to the borrower? Acetero. I'm trying to think of Cruz. Was it five letters? Five letters. What did the first four letters say to the borrower? You're in default. You're in default. That's it. That's it. Okay. And then what did the fifth letter say? It was equally deficient, but what did it say? I am drawing a blank on that. I'm confusing it with Cruz.  Well, let's see. Cruz wasn't much better. What did Cruz do wrong? I mean, then here we have nearly verbatim language, don't we? I don't think so. You know, we have two defects, we alleged, in the underlying case. The mortgage requires in paragraph 22 that the lender inform the borrower that she has the right to reinstate after acceleration. The second one was that she has the right to assert in the foreclosure any defenses that she made. Did you file a gross appeal? No, I did not file a gross appeal. So you're not contesting this other defect, are you? No, but I didn't. Tell us. You did not file a gross appeal contesting the judge's finding that that was merely a technical defect. I did not. So I don't think you need to spend any time talking about an issue that you didn't raise in a gross appeal. So we have three cases to focus on for strict compliance. And so what is strict compliance? And let's move on from strict compliance. There's about a dozen cases that talk about a technical defect. Why, in your response brief, did you not discuss any of the cases that were cited by opposing counsel? Any of those. I'm not going to cite six of them were unpublished cases, Your Honor. They're all citable. Okay. They cannot be used as precedents, but they're all after 2021. Every single one. The cases I cited are a set of wooden crews. Right. I'm asking you why didn't you in any way discuss the cases that suggest that this is a technical defect and that if it is a technical defect, you have to show prejudice. There has to be prejudice shown. In my brief, I believe I stated that the other flaw, the other that I was just talking about. That you didn't cross appeal on. That I did not cross appeal on. You can't be raising that here. You did not file a cross appeal on this other question of notice. But the court, after finishing the talking about notices, did ask in seven pages, what is strict compliance in Illinois? And the trial court went through a lot of questions. Strict compliance to me has always been, and there's an MSL I cite in here, the satisfaction of a condition proceeding is subject to the rule of strict compliance. Okay. But you know what, counsel? We want to know. Yep. We want to know why all the other cases that are cited that talk about a technical defect, such as where the language is not word for word the same. Yes. Okay? Yes. Now, let's talk about how reinstatement is defined, not only in our own statutes, but it's defined as actually effecting by curing all defects, defaults rather, than existing, other than the payment of such portion of the principle, which would not have been due had no acceleration occurred. Are you saying that, again, we're past strict compliance. We're asking you to tell us why this is not a technical defect. Fair enough. And don't go into the defect in the notice that you never cross-appealed on. Paragraph 19 gives four elements to it.  The only one I'm still hearing is the reinstatement of the default. Yeah. And it says you have to cure the default. Right. You have to cure any other defaults. Other than the payment. Other than the payment. Yes. You have to pay your attorney's fees or any other fees, whatever that is. And the fourth one is kind of nebulous. It's kind of anything else that your lender requires. But we don't have any of that. No, we didn't have any of that. Those are, that's, you know, that's strict compliance is to this contract. And that's what this contract requires, the contract. Mr. Ojenovic, what happens when a default on a note is cured? Doesn't it return to the pre-default status? A default on a note is cured? No, if the original default was $10,000 in this case, that doesn't decelerate the acceleration per paragraph 19. It's, you have the right to reinstate after acceleration, and then paragraph 19 spells it out. Paragraph 22 talks about a right to cure within 30 days of getting your notice of a default. Those are two different, a right to cure is defined in paragraph 22. It says you have the right to cure within 30 days. This amount of money. That was, I think, $10,000 in the letter. There's more in that notice than that. There's more than you have a right to cure in 30 days. There's the default after acceleration. It's in the notice. That's, you have paragraph 19 that spells out the things that you have to do. Right. Yeah. Right. What specifically is missing from the notice? That you have the right to reinstate, reinstate, decelerate your loan after acceleration. Okay. Here. Then tell us, what does the statute mean? 15, 16- 16-0-2. 16-0-2. Reinstate. Reinstate is defined. It's a limited one. I believe it's a, you can use it once. There's some time limits on there. But it's not the right to reinstate that's defined in the contract. It says here, reinstatement is affected by curing all defaults then existing other than payment of such portion of the principle which would not have been due had no acceleration occurred. I go back to paragraph 19, then I think- Are we looking at the bar? Let's talk about the case, all the cases you never discussed. Okay. Let's go with the one by Justice Harris. How is that case any different? It was the exact same notice provision. The goal was- Could you answer the question, why didn't you respond? Why didn't you in any way distinguish PODAR? PODAR has this same issue, the same particular provision of the notice that is on appeal. And it held that the right to cure after acceleration equals the right to reinstate after acceleration. The PODAR is on all fours. Yeah. And we recognize it's a 2018 decision that's unpublished, but that doesn't bind us, does it? It doesn't bind you. We can do whatever we want. It binds me, I guess. We can talk about our Collins cases from 2018, whether they were published or unpublished. I mean, I may be strategic. I looked at this and these are unpublished cases. What can I cite? What I did cite is cases that came afterwards, solid cases that talk about- What? Asetto and Cruz. And Asetto and Cruz talk about everything. They talk about- Those are so distinguishable, though, on the notices.  Everything- They're gravely insufficient. Not just one word being different.  This whole case is to talk about the sanctity of the promise being the same. The conditions perceived should be the same as the promise. And that the courts should enforce the will of the parties as manifested in the writing right over here. I don't think a child should be rewriting the mortgage. We have this agreement. It is their agreement, the bank's agreement. Paragraph 19 says, I don't think the borrower should be required to go look at our statutes. Are we looking- We're looking to see if the information was conveyed. And we think that the information, that the language of reinstatement is any clearer to any person than saying- But the sole compliance is irrelevant. What about these other district cases, first district cases, that all talked about that a technical defect, where the word-for-word definition is not used. In Ravitz, 2019, exact language, verbatim, word-for-word is not necessary. And that was a situation where there was a delay in raising the affirmative defense. That, in that case, it said it surprised the bank. Because the borrower waited too long to raise the affirmative defense, just like happened here. I think we're looking at the content of this provision. You have the right to reinstate after acceleration. And a statute, an Illinois binding statute, defines reinstatement as effective as curing a default. You're saying those things don't mean the same. We're enforcing a contract here. These are the contract terms. The strict compliance analysis, whether in technical compliance, applies to this contract. And this contract is very specific. It has a section defining the right to reinstate. You were the lawyer for 18 years. Yes. When did you raise the notice defense? 2019. Some great cases came down. I think Acetero or Cruz came out about the same time. And you would compare the lack of notice in Acetero and Gold as this case? Gold was based on Florida law. That's a scaffolding of Gold. Substantial compliance in Florida. And Gold said, well, that's how they relied on Florida law. And then they relied on LUCA and PAJOR, two grace period notice cases that did not deal with this content. You've never discussed in your response brief. In my response brief, I stated the trial court reluctantly applied Gold. And I informed the court that the trial court stated that this technical strict compliance should be revisited. What was your original answer to the complaint regarding notice? I think it was the era before deemed and construed. There was just denials. Was it a general denial? It was a general denial, yes. You listed three affirmative defenses. There were three affirmative defenses. One was, actually, there were two, standing and capacity, which there was a prior summary judgment that the bank filed. They lost. The court said it and still said the second time that standing is an issue. But there was nothing. None of them relevant to what's before. No, no, no. No, they're not. So, yeah, we filed the first December, I think, 2019, we filed our motion for summary judgment. And on the case law, we briefed this. The trial court initially denied it, saying, well, you know, it's untimely or prejudicial. And then we had a motion to reconsider it. And the trial court said, you know what, you can, under the statute, bring an affirmative defense for the first time at summary judgment. Because you don't really have to file an answer when someone files a complaint. You can file a motion for summary judgment. And that was extremely briefed. And so those affirmative defenses were restored. And then they weren't answered. We did briefing through COVID afterwards. So there was no prejudice to Bank of New York. There wasn't? No. The court determined there was no prejudice. And was there any prejudice to, let's assume now, okay? Yeah. We're going to go forward. We're going to assume this was a technical defect. Now, are you going to tell us there was prejudice to Ms. Barlstein? With strict compliance, the prejudice to the – I don't understand that. You can't understand. We're past strict compliance. There are multiple cases you didn't talk about. All of those cases say that if the language results in a mere or a technical defect, then prejudice must be shown. So I'm asking you, can you just – There was no prejudice. There was no prejudice. That's the question.  So there. Now, let's back up. You've just said it here in the courtroom. Yes. No prejudice. No prejudice. All right. So if we find that this language difference meant the same thing, is the same thing, conveyed the same information to the borrower, okay, do you lose in that situation where we find that there was a technical defect, and now you've just told us no prejudice? Well, I think if this language – That's prejudice. If the court finds that this language is a technical defect, I think it just changes everything regarding paragraph 22 and practice of law and strict compliance. And have you read the Ravitz case at all, the one that Justice Walker referred to earlier? Ravitz is the one where the appellate court determined that it's surprising, I think. But it also said that the notice language doesn't have to be verbatim. It doesn't have to be word for word. It just has to convey the correct information as required by the memories document and the statute. And here we've got the statute, we keep coming back to, that kind of provides a definition for reinstatement, and it refers to curing the default. And once again, we're looking at a contract with defined terms.  And this is – So he said we should never even look at the statute? I'm saying that we're looking at paragraph 22 as strict compliance with the terms of the mortgage. And of course, Kodar, which again, you didn't look at, you didn't refer to in your brief. I did not. It's written by our colleagues, right? Yeah. And we can absolutely look at that. I know. To be persuaded from prior decisions of our colleagues, it was exactly the same verbiage as this case. It's on all fours. And gold has been used in cases I can't cite that were cited in the opening brief. Gold has been used – You can't cite them for – you're saying you can't cite them? Those are cases that were pre-2021. Oh, okay. Yeah. And I felt constrained. I felt like what I had to talk about was – Well, no, you can't cite those. Yeah. No, I can't. But you can cite the cases that have all – well, actually, your opposing counsel cited a number of cases where ASSITURO has been distinguished because the notice was so defective there, it couldn't even be considered a technical defect. But I think what it all comes down to is are we changing the parameters? Are we expanding strict compliance? Is it turning into substantial compliance? When does the line cross into a gold case, Florida law, substantial compliance? I think the protocol here, in closing here, I wanted just to read. So I think today is a settlement improves our standard or is gold part of strict compliance? Because it's not strict compliance. It's talking about technical defaults. It's talking about substantial compliance, looking at statutes. You know what was the most significant problem in the ASSITURO case? It was what's a borrower's worst nightmare. When you're told that, okay, maybe you've fallen behind in your payments. Maybe you have had a sudden illness. Maybe you had to file for bankruptcy. But when you're told that that note is going to be accelerated and every single penny of that $500,000 mortgage is going to be accelerated, that really hurts. And that was the thing that was what the court was emphasizing in that case. That's not this case. Okay? And you never even talked about all the first district cases that have distinguished ASSITURO. You're saying, oh, it was new law and there's nothing that, you know. Cruise of distinctions. Cruise, again, is distinguishable on its facts. Yeah, those cases talk about gold too. Would you agree that probably the worst thing in terms of a notice would be told that you're going to owe $500,000 when you are behind in a couple of payments? Sure. Isn't that the worst nightmare for a borrower? Sure. And wasn't that what was truly missing, among other things, in the ASSITURO case? Yes. So once again, though. This was not a home purchase. This was an investment, wasn't it? No, no, no. This is a residence. It was a residence purchased as an investment. She was not living in that home. Yes, this is a residence. That's not my question again. Yes. Is there anything in the record that says that this was her home where she was residing? This was purchased as an investment. And there's different, you know, provisions depending on whether you're going to live in a home. And in some cases, you have to live in a home to get the mortgage. The only place that mentioned this as an investment was in the opening brief. I mean, we had 18 years of this, and the mortgages. So that's saying it wasn't an investment purchase. There's no word of investment anywhere in 18 years except in the opening brief. Well, anyway. We have to wrap this up. Okay. We have another cabinet. Yes, yes. So I think the court, when it goes back, the court asked for guidance here. What is for compliance? We need a definition. I mean, it's not cut and paste, but you need substance. You need the specific information. You need the information that you bargained for in that notice. And I think gold, gold, its reliance on Florida's financial compliance and Pedro and Luca, which start with mailing and technical issues of mailing, they don't substance cases. I think we need guidance. And I believe that Assetto and Cruz are that guidance and should be followed, that strict compliance is compliance that provides specific information in the mortgage, the substantive information that's in the notice, not to mislead or distort or give you another right. And I would ask the court to affirm the lawyer. Thank you, counsel. Mr. Golay. Thank you, Your Honor. I know we're running short on time, so I'll be very brief. I just wanted to correct one statement in regard to the statute of limitations issue. Coleman is consistent with Cabo. Coleman did find that a subsequent action on a note was barred by res judicata where there was a deficiency against the bar in the original judicial foreclosure action. And its reasoning is very similar, that there's this implicit second claim under the note when you're seeking a deficiency. If you're not seeking a deficiency, it's a different thing. Second, this notion that whether an action is based on the note is somehow outcome determinative as to whether there's actually a personal judgment entered at the end is not how any preservation of a statute of limitations work across any claim, and it shouldn't here either. If the right to obtain a deficiency at the end exists, it only does so by nature of the action being brought under the note and preserving that, right? And then just briefly as a final point, it's not really material to this Court's decision, but it does affect some of the matters should it be remanded. The timing of acceleration, it has to be clear and unequivocal. The letter in this case said, if you don't pay by this date, it will be accelerated. That could have been on the date identified. It could have been two weeks later, and that statement would still be true. It could have been when the complaint was filed, as it was in this case. That was the first clear and unequivocal acceleration. And that's consistent with the Stigler case that said, will accelerate is not unequivocal phrasing. And with that, unless there's any other questions, I would rest. All right. Justice Walker? Thank you, counsel. Thank you. Thank you, counsel, for your well-presented arguments. The Court will take a short recess. We are going to be taking this matter under advisement and giving both sides due consideration.